FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 30, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DAVID S.,

      Plaintiff,

      v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL
SECURITY[1],

      Defendant.

No. 1:24-cv-03193-ACE

ORDER GRANTING
PLAINTIFF'S MOTION TO REVERSE
THE DECISION OF THE
COMMISSIONER

**ECF Nos. 16, 19**

**BEFORE THE COURT** is Plaintiff's Opening Brief and the Commissioner's Brief in response.  ECF Nos. 16, 19.  Attorney Jamie Olivares represents David S. (Plaintiff). Assistant United States Attorney Joseph P. Derrig and Attorney Ryan Ta Lu represent the Commissioner of Social Security (Defendant).  The parties have consented to proceed before the undersigned by operation of Local Magistrate Judge Rule (LMJR) 2(b)(2), as no party returned a Declination of Consent Form to the Clerk's Office by the established deadline.  *See* ECF No. 2.  After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's motion to reverse the decision of the Commissioner, **DENIES** Defendant's motion to affirm, and **REMANDS** the matter for further proceedings under sentence four of 42 U.S.C. § 405(g).

\\

\\

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the named defendant.

ORDER GRANTING PLAINTIFF'S MOTION - 1

## JURISDICTION

Plaintiff David S. filed an application for social security benefits on August 9, 2022, alleging disability since November 11, 2021.  Tr. 29, 84–91.  The application was denied initially and upon reconsideration.  Tr. 84–100.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ), Tr. 119–20, and following the hearing, ALJ David Johnson denied the application, Tr. 29–46.  The Appeals Council denied Plaintiff's request for review.  Tr. 1–7, 204–05.  Plaintiff filed the instant action for judicial review.  ECF No. 1.  This Court has jurisdiction to review Plaintiff's claim for benefits pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The Court reviews ALJ determinations of law *de novo*.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The Court may only reverse the ALJ's decision if "it contains legal error or is not supported by substantial evidence."  *Garrison*, 759 F.3d at 1009; *see also Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a preponderance."  *Tackett*, 180 F.3d at 1098 (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).  Put another way, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Garrison*, F.3d at 1009.  If the evidence can reasonably support the ALJ's decision, the Court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1098; *Garrison*, F.3d at 1010.  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the

ORDER GRANTING PLAINTIFF'S MOTION - 2

evidence and making the decision. *Brawner v. Sec'y Health & Hum. Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Code of Federal Regulations sets a five-step sequential evaluation process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). The claimant bears the burden of proof at steps one through four, while the Commissioner bears the burden of proof at step five. *Garrison*, 759 F.3d at 1011. The five steps of the evaluation process are:

(1) The claimant's "work activity" and whether the claimant is "doing substantial gainful activity." If so, the claimant is not disabled, and the inquiry ends.

(2) The "medical severity" of the claimant's impairments, i.e., whether the impairment or combination of impairments is "severe," and whether the impairment meets the § 404.1509 duration requirement. If the claimant does not have "severe" impairment or combination of impairments that meets the duration requirement, the claimant is not disabled, and the inquiry ends.

(3) Whether the impairment "meets or equals" one of the impairment listings in 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. If so, the claimant *is* disabled, and the inquiry ends.

(4) The claimant's "residual functional capacity" and "past relevant work," and whether the claimant "can still do [their] past relevant work." If the claimant can still do their past relevant work, they are not disabled, and the inquiry ends.

(5) Whether, considering the claimant's "age, education, and work experience," they can make an adjustment to other work. If so, the claimant is not disabled, and the inquiry ends.

ORDER GRANTING PLAINTIFF'S MOTION - 3

§ 404.1520(a)(4)(i)–(v).

The ALJ considers the five steps sequentially. § 404.1520(a)(4). If at any step, the ALJ finds the claimant disabled or not disabled, the ALJ makes the determination and does not consider the subsequent steps. *Id.* However, if the ALJ cannot find the claimant disabled or not disabled at a step, the ALJ continues to the next step. *Id.*

Thus, a claimant meets their burden for disability by establishing: (1) they are not doing substantial gainful activity; (2) they have severe impairment; and (3) their impairment meets or equals one of the impairment listings, or (4) they cannot perform any past relevant work. § 404.1520(a)(4)(i)–(iv); *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). If a claimant meets their burden at steps one through four, the burden shifts to the Commissioner at step five to establish that the claimant can make an adjustment to other work. § 404.1520(a)(4)(iv); *Thomas*, 278 F.3d at 955. Specifically, the Commissioner must establish at step five that any work that the claimant can adjust to "exists in significant numbers in the national economy." § 404.1560(c); *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet their burden at step five, the claimant is disabled. § 404.1520(a)(4)(v).

## ADMINISTRATIVE FINDINGS

Administrative Law Judge (ALJ) David Johnson found Plaintiff David S. not disabled after completing the five-step sequential evaluation of Plaintiff's application for social security benefits. Tr. 29–46.

At step one, the ALJ found Plaintiff had "not engaged in substantial gainful activity since November 11, 2021, the alleged onset date." Tr. 31.

At step two, the ALJ found Plaintiff had "the following severe impairments: PTSD, adjustment disorder, major depressive disorder, and generalized anxiety disorder." Tr. 31.

ORDER GRANTING PLAINTIFF'S MOTION - 4

At step three, the ALJ found Plaintiff's severe impairments did not meet or equal the severity of one of the impairment listings in 20 C.F.R. pt. 404, subpt. P, app. 1.  Tr. 32.

At step four, the ALJ found Plaintiff's past relevant work, a correction officer, exceeded Plaintiff's residual functional capacity, and thus, Plaintiff could not perform any past relevant work.  Tr. 44.

Finally, at step five, the ALJ found Plaintiff could make an adjustment to other work.  Tr. 45.

As a result, the ALJ found Plaintiff "not disabled" since November 11, 2021. Tr. 46.  Plaintiff appealed to this Court.

## ISSUES

Plaintiff raises the following issues with the ALJ's determination that Plaintiff is not disabled: (1) whether the ALJ properly evaluated medical opinions; (2) whether the ALJ properly determined Plaintiff's residual functional capacity; and (3) whether the ALJ properly evaluated Plaintiff's subjective claims.

## DISCUSSION

### A. Whether the ALJ properly evaluated medical opinions.

The ALJ considers the following factors when evaluating medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors," such as familiarity. 20 C.F.R. §§ 404.1520c(c)(1)–(5).  The most important factors are supportability and consistency, and the ALJ must explain how they considered those factors in the determination.  § 404.1520c(b)(2).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing § 404.1520c(c)(1)).  "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* (citing § 404.1520c(c)(2)).

ORDER GRANTING PLAINTIFF'S MOTION - 5

Plaintiff argues the ALJ failed to provide legally sufficient reasons to reject the medical opinions of the following medical providers: Thomas Genthe, Ph.D.; Candie Wellwood, PMHNP-BC, ARNP; James R. Hopfenbeck, M.D.; and Lorelei Thompson, Ph.D.  The Court agrees.  Importantly, the ALJ repeatedly found the medical opinions to be inconsistent with Plaintiff's "normal" mental status examinations, but that finding is not supported by substantial evidence.  *See Garrison*, 759 F.3d at 1009.

### 1. Whether the ALJ properly evaluated Dr. Genthe's medical opinion.

In March 2023, Thomas Genthe, Ph.D., examined Plaintiff and opined that Plaintiff's Post-Traumatic Stress Disorder and Major Depressive Disorder "symptoms are not being managed, which are likely to interfere with his ability to sustain employment."  Tr. 811.  Dr. Genthe opined that Plaintiff had poor ability to: "interact appropriately with the public"; "get along with coworkers"; "respond appropriately to criticism"; and "adhere to basic standards of neatness and cleanliness."  Tr. 812.  Dr. Genthe then opined that Plaintiff would "likely have some difficulty understanding and remembering detailed instructions," "carrying out detailed or complicated instructions in a reasonable amount of time," maintaining attention and concentration for extended periods of time, and "responding appropriately to changes in the work setting."  Tr. 812.

The ALJ found Dr. Genthe's opinion unpersuasive.  Tr. 38–39.  The ALJ reasoned that Dr. Genthe's opinion was "unsupported and inconsistent" with three aspects of Plaintiff's medical record: (1) Plaintiff's participation in mental health treatment; (2) Plaintiff's mental status examinations; and (3) Plaintiff's statements regarding his activities of daily living.  Tr. 39.

First, the ALJ noted that although Dr. Genthe opined that Plaintiff's symptoms were "not being managed," Plaintiff was receiving mental health treatment at Forensic Assessment and Treatment Services and Essential Psychiatry.

ORDER GRANTING PLAINTIFF'S MOTION - 6

Tr. 39.  However, an inability to manage or control symptoms is not reasonably inconsistent with participation in treatment.  Although the goal of treatment is to reduce symptoms, participation in treatment does not guarantee the immediate resolution of symptoms, nor does it guarantee immediate improvement, or in some cases, improvement at all.  The fact that Plaintiff was receiving medical treatment is not reasonably inconsistent with his inability to manage or control his symptoms.

Moreover, Dr. Genthe was aware that Plaintiff was receiving mental health treatment and still opined that Plaintiff's symptoms were "not being managed." Tr. 808, 811.  The medical record from Plaintiff's visit with Dr. Genthe indicates that Plaintiff "stated that he is currently receiving mental health counseling services and has been receiving such for/since 'one year.'"  Tr. 808.  It is with this knowledge that Dr. Genthe opined that Plaintiff's symptoms were "not being managed," and that "mental health counseling services might be beneficial."  Tr. 811.  Thus, the ALJ's determination that Dr. Genthe's opinion is inconsistent with Plaintiff's medical treatment is not supported by substantial evidence.  *See Garrison*, 759 F.3d at 1009.

Second, the ALJ found Dr. Genthe's opinion to be inconsistent with Plaintiff's mental status examinations from his visits at Essential Psychiatry with Candie Wellwood, PMHNP-BC, ARNP.  Tr. 39 (citing to Exhibit 21F, the Essential Psychiatry records).  The ALJ found Dr. Genthe's opined limitations to be "over-exaggerated."  Tr. 39.  The ALJ reasoned that Plaintiff's recent mental status examinations from Nurse Wellwood often showed that Plaintiff "appeared [his] stated age, with good eye contact and well groomed," "appeared friendly," "was cooperative," had "no signs of psychomotor agitation, retardation, or bizarre behavior," had "speech and language skills . . . within normal limits," appropriate mood or affect, and normal thought process and content, and no signs of delusions or suicidal ideation.  Tr. 39.

ORDER GRANTING PLAINTIFF'S MOTION - 7

The ALJ erred in finding that Dr. Genthe's opined limitations were inconsistent with Plaintiff's recent mental status examinations because the limitations and examinations are not reasonably inconsistent.  For example, Dr. Genthe's opinion that Plaintiff would "likely have some difficulty understanding and remembering detailed instructions," Tr. 812, is not contradicted by any of Nurse Wellwood's mental status examination findings described by the ALJ, including, for example, that Plaintiff had normal thought process and content.

Additionally, Plaintiff's performance in the closed environment of an examination by a medical professional is not reasonably inconsistent with Dr. Genthe's opined limitations concerning Plaintiff's ability to, among other things, function with coworkers or the public.  Moreover, within the same progress notes of the mental status examination findings the ALJ cited as inconsistent with Dr. Genthe's findings, Nurse Wellwood also stated that Plaintiff's "level of stress was severe, and included occupational problems and social environment problems." Tr. 1030, 1032, 1035, 1038, 1041, 1047, 1050, 1054, 1057.  A patient's performance in the closed, sterile setting of a medical examination is only one portion of a medical provider's evaluation of the patient.

Finally, even if Dr. Genthe's opined limitations were inconsistent with findings in other mental status examinations' that, for example, Plaintiff had normal affect and no psychomotor agitation, the mental status examination conducted by Dr. Genthe revealed that Plaintiff "presented as restless," and had anxious affect.  Tr. 810.  Thus, Dr. Genthe's opinion is not reasonably inconsistent with Plaintiff's mental status examinations.

Third, the ALJ erred by finding Dr. Genthe's opinion to be inconsistent with Plaintiff's "own statements regarding his activities of daily living."  Tr. 39.  The ALJ noted that Plaintiff's activities of daily living were "fairly robust," citing to Plaintiff's Function Report, Tr. 280–83, and Dr. Genthe's report, Tr. 809.  Tr. 39.  In those documents, Plaintiff's reported activities of daily living include: eating,

ORDER GRANTING PLAINTIFF'S MOTION - 8

making microwavable meals or a sandwich, shoveling snow, driving a car, shopping for groceries, texting friends, going to the gym, bathing, brushing his teeth, doing laundry, and vacuuming.  Tr. 280–83, 808–09.

Plaintiff's activities of daily living are not reasonably inconsistent with Dr. Genthe's opined limitations.  Plaintiff's reported activities of daily living are not similar to typical work responsibilities.  *See, e.g.*, *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017*)* ("House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.").  Plaintiff's activities of daily living, even including going to the gym and the grocery store, do not require the ability to interact with the public and coworkers that employment does.  Thus, Dr. Genthe's opinion is not reasonably inconsistent with Plaintiff's activities of daily living.

Therefore, for the foregoing reasons, the ALJ's evaluation of Dr. Genthe's medical opinion is not supported by substantial evidence.  *Garrison*, 759 F.3d at 1009.

### 2. Whether the ALJ properly evaluated Nurse Wellwood's medical opinion.

In September 2023, Candie Wellwood, PMHNP-BC, ARNP, opined that Plaintiff's mental functioning precluded performance or productivity for thirty percent of an eight-hour workday in the categories of understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  Tr. 898–901.  Nurse Wellwood further opined that Plaintiff was likely to miss five

ORDER GRANTING PLAINTIFF'S MOTION - 9

days or more of work per month and to be "off task" at work more than thirty percent of an eight-hour workday.  Tr. 898–901.

The ALJ found Nurse Wellwood's opinion unpersuasive.  Tr. 42.  The ALJ reasoned that Nurse Wellwood's opinion was "unsupported and inconsistent" because it overestimated the limiting effects of Plaintiff's impairments and was inconsistent with other more recent mental status examinations.  Tr. 42.

However, mental status examinations are not the end of the analysis.  *See supra* Section A.1.  Instead, mental status examinations reflect a patient's performance in the closed, sterile setting of a medical examination—not the patient's performance in the workplace.  The mental status examinations that Plaintiff "appeared their stated age, with good eye contact and well groomed," for example, are not inconsistent with Nurse Wellwood's finding that, for example, Plaintiff would be "off task" at work due to being "focused on potential threats," or "finding all exits."  *See* Tr. 41–42, 901.  Thus, the ALJ erred by finding Nurse Wellwood's opinion to be inconsistent with recent mental status examinations.

### 3. Whether the ALJ properly evaluated Dr. Hopfenbeck's medical opinion.

In November 2023, James R. Hopfenbeck, M.D., examined Plaintiff and diagnosed him with Post-Traumatic Stress Disorder.  Tr. 968–76.  Dr. Hopfenbeck opined that Plaintiff "suffers from significant PTSD that fully meets DSM-5 criteria, and affects him adversely in multiple ways."  Tr. 975.  Dr. Hopfenbeck noted that Plaintiff "continues to experience serious and highly distressing PTSD symptoms," including "nightmares, intrusive thoughts, fears of domination and threats of violence, panic, proneness to anger, avoidance, hypervigilance, startle response, and depression."  Tr. 975.

Accordingly, regarding the workplace, Dr. Hopfenbeck opined Plaintiff "would be repeatedly prone to interpret normal behaviors of coworkers as attempts to dominate, threaten and harm him, and he would unable to concentrate on work

ORDER GRANTING PLAINTIFF'S MOTION - 10

and be prone to angry outbursts and bizarre behavior." Tr. 975. Dr. Hopfenbeck further opined that Plaintiff "would pose a positive physical danger to others in any workplace" due to his symptoms. Tr. 976. Finally, Dr. Hopfenbeck opined that Plaintiff "would miss work often and otherwise spend a great deal of time being off-task," and has had an "inability to work in any sort of gainful employment" since November 11, 2021. Tr. 976.

The ALJ found Dr. Hopfenbeck's opinion unpersuasive. Tr. 40–41. The ALJ reasoned that Dr. Hopfenbeck's opinion was "unsupported and inconsistent" with three aspects of Plaintiff's medical record: (1) Plaintiff's "history that accounted for the atypical situation"; (2) Plaintiff's more recent exams; and (3) the opinions of Richard Schneider, M.D., and Michael Friedman, D.O. Tr. 41.

First, the ALJ noted that Dr. Hopfenbeck did not analyze Plaintiff's "history that accounted for the atypical situation," which the ALJ stated included "worsening symptoms despite extensive PTSD treatment," Plaintiff's "dramatic and practiced" presentation, and "evidence in the record that shows greater capabilities." Tr. 41. The ALJ asserted that Dr. Hopfenbeck did not consider that Plaintiff had worsening symptoms despite extensive treatment and had a "dramatic and practiced" presentation because Dr. Hopfenbeck did not review Dr. Friedman's psychiatric evaluation. Tr. 41. Evidence reasonably supports this determination, so the Court may not substitute its judgment for that of the ALJ. *See Tackett*, 180 F.3d at 1098; *Garrison*, F.3d at 1010.

Additionally, the ALJ noted that Dr. Hopfenbeck did not administer an MMPI, nor did he review the MMPI or Dr. Friedman's opinion. Tr. 41. Evidence reasonably supports this determination, so the Court may not substitute its judgment for that of the ALJ. *See Tackett*, 180 F.3d at 1098; *Garrison*, F.3d at 1010.

Finally, the ALJ also noted that there was "evidence in the record that shows greater capabilities," and cited to page ten of Exhibit No. 12F, Dr. Schneider's

ORDER GRANTING PLAINTIFF'S MOTION - 11

evaluation, and page sixty-one of Exhibit No. 23F, Dr. Friedman's evaluation. Tr. 41. Without further specificity by the ALJ, it appears the ALJ was again referring to the results of mental status examinations by those doctors. However, as described above, *see supra* Section A.1., nothing in the mental status examinations—performed in a closed, sterile setting of an evaluation by a medical professional—show that Plaintiff has "greater capabilities" in the workplace than opined by Dr. Hopfenbeck. Thus, the ALJ erred.

Second, the ALJ found Dr. Hopfenbeck's opinion to be inconsistent with "the findings of more recent exams," including Plaintiff's January 2024 mental status examination by Lorelei Thompson, Ph.D., where Plaintiff "appeared appropriate; motor activity was unremarkable; speech was either normal; mood was euthymic, and affect was congruent; insight was good; . . . was unable to remember anything; attention/concentration were distractable; thought process was unremarkable; thought content was appropriate; and perception was unremarkable." Tr. 41. These mental status examination findings are not reasonably inconsistent with Dr. Hopfenbeck's opinion. Indeed, Dr. Hopfenbeck's mental status examination was very similar to the January 2024 mental status examination, finding that Plaintiff was "alert and oriented," "aware of the circumstances," "able to recall only 1 out of 4 objects after five minutes," and "logical and coherent." Tr. 974–75. Despite this mental status examination, Dr. Hopfenbeck opined that Plaintiff suffered from PTSD and was unable to work. Tr. 976. And again, as described previously, mental status examinations are not the be-all and end-all of the analysis. *See supra* Section A.1. Therefore, the ALJ erred.

Third, the ALJ found Dr. Hopfenbeck's opinion to be inconsistent with the opinions of Dr. Schneider and Dr. Freidman, which the ALJ found persuasive. Tr. 41. The ALJ noted that Plaintiff demonstrated "preoccupation," "dramatic presentation," "hypervigilance," and "intact memory" to Dr. Friedman, which was

ORDER GRANTING PLAINTIFF'S MOTION - 12

not present with Dr. Hopfenbeck. Tr. 41. Evidence reasonably supports this determination, so the Court may not substitute its judgment for that of the ALJ. *See Tackett*, 180 F.3d at 1098; *Garrison*, F.3d at 1010.

In sum, the ALJ erred by discounting Dr. Hopfenbeck's opinion on the basis of Plaintiff's mental status examinations.

### 4. Whether the ALJ properly evaluated Dr. Thompson's medical opinion.

In February 2024, Lorelei Thompson, Ph.D., opined that Plaintiff's mental functioning precluded performance or productivity for twenty percent or thirty percent of an eight-hour workday in the categories of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Tr. 1065–68. Dr. Thompson further opined that Plaintiff was likely to miss five days or more of work per month and to be "off task" at work more than thirty percent of an eight-hour workday. Tr. 1065–68.

The ALJ found Dr. Thompson's opinion unpersuasive. Tr. 41. The ALJ reasoned that Dr. Thompson's opinion was "unsupported and inconsistent" because it overestimated the limiting effects of Plaintiff's impairments. Tr. 41. The ALJ noted that Dr. Thompson's opinion was inconsistent with: (1) Dr. Thompson's own examinations; and (2) other more recent mental status examinations. Tr. 41.

First, the ALJ found that Dr. Thompson's opined limitations were inconsistent with her own examinations of Plaintiff, which "mostly showed normal findings, but also usually noted the claimant was anxious and had variable levels of concentration." Tr. 41. Dr. Thompson's opined limitations are not reasonably inconsistent with her own examinations. Throughout Dr. Thompson's progress notes of Plaintiff's visits, Dr. Thompson often describes Plaintiff's mental status considerations, such as general appearance, motor activity, speech, and thought process, as appropriate, unremarkable, or normal. *See, e.g.*, Tr. 579–614.

ORDER GRANTING PLAINTIFF'S MOTION - 13

However, those particularized findings of Plaintiff's mental status are not reflective of Plaintiff's limitations in the different environment of the workplace. *See supra* Section A.1. Dr. Thompson notes this distinction, as within the same progress notes, despite making those "normal findings" regarding Plaintiff's mental status, Dr. Thompson notes, for example, that Plaintiff "will have difficulty working with others due to anger and irritability," "will not do well with strangers due to hypervigilance," and "will not be able to work in professions that resemble corrections." Tr. 583, 585. Thus, the ALJ's finding that Dr. Thompson's opined limitations are inconsistent with her own examinations of Plaintiff is not supported by substantial evidence. *See Garrison*, 759 F.3d at 1009.

Second, the ALJ found that Dr. Thompson's opined limitations were inconsistent with other more recent mental status examinations. Tr. 41–42. However, as described above and in § A.1., mental status examinations are not the entirety of the analysis. Instead, mental status examinations reflect a patient's performance in the closed, sterile setting of a medical examination—not the patient's performance in the workplace. The mental status examinations that Plaintiff "appeared their stated age, with good eye contact and well groomed," for example, are not inconsistent with Dr. Thompson's finding, for example, that Plaintiff "will have difficulty working with others due to anger and irritability." *See* Tr. 41–42, 583, 585. Thus, the ALJ erred by discounting Dr. Thompson's opinion as inconsistent with her own examinations and other mental status examinations.

**B. Whether the ALJ properly determined Plaintiff's residual functional capacity.**

The ALJ found that Plaintiff has the residual functional capacity to:

[P]erform a full range of work at all exertional levels that consists of simple tasks; that does not require interaction with the general public; that occurs where the general public is not typically present; that does not require more than occasional, superficial interaction with

ORDER GRANTING PLAINTIFF'S MOTION - 14

coworkers or supervisors; that does not require group-work; that consists of tasks that follow a set routine; and that does not require driving.

Tr. 33.

Plaintiff argues the ALJ erred by not adopting in Plaintiff's residual functional capacity the limitations provided by Bruce E., Ph.D., and Matthew Comrie, Psy.D., that Plaintiff may miss days of work intermittently. ECF Nos. 16 at 17–18, 20 at 1–6. Plaintiff asserts that because the ALJ found the opinions of Dr. E and Dr. Comrie to be somewhat and generally persuasive, the ALJ was required to include all their opined limitations in the residual functional capacity unless the ALJ specifically excluded the limitations. ECF No. 16 at 18. Plaintiff argues that because the ALJ failed to adopt the "may miss work intermittently" limitation, the ALJ provided an inaccurate hypothetical to the vocational expert. *See* ECF Nos. 16 at 17–18, 20 at 1–6. Plaintiff argues that the "may miss work intermittently" limitation would have been determinative to the vocational expert's recommendation because the vocational expert opined that a person who misses more than eight hours of work per month is not able to maintain employment. Tr. 77–78. Therefore, Plaintiff argued the inaccurate hypothetical resulted in an inaccurate recommendation by the vocational expert as to the availability of other jobs in the national economy for Plaintiff. *See* ECF Nos. 16 at 17–18, 20 at 1–6. The Court agrees that the ALJ erred by failing to include Dr. E's and Dr. Comrie's "may miss work intermittently" limitation in the residual functional capacity.

"[I]n hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). However, "an ALJ is not free to disregard properly supported limitations." *Id.* When an ALJ fails to account for properly supported limitations, the hypothetical posed to the vocational expert is legally

ORDER GRANTING PLAINTIFF'S MOTION - 15

inadequate. *See id.* And when those limitations "would have been determinative as to the vocational expert's recommendation," the error is not harmless. *See id.*

Here, both Dr. E and Dr. Comrie opined that Plaintiff "may miss days of work intermittently." Tr. 89, 98. The ALJ found Dr. Comrie's opinion to be "only somewhat persuasive," and "supported and consistent with the medical record." Tr. 42–43. However, the ALJ found that further limitations were warranted than opined by Dr. Comrie. Tr. 42–43. Similarly, the ALJ found Dr. E's opinion to be "generally persuasive," and "supported and consistent with the medical record." Tr. 43. But in contrast to Dr. Comrie, the ALJ held that Dr. E's opined limitations "appropriately limit[ed]" Plaintiff. Tr. 43. Despite finding both Dr. Comrie's and Dr. E's opinions at least somewhat persuasive, and despite finding that Dr. E provided appropriate limitations for Plaintiff, the ALJ did not adopt either doctor's limitation that Plaintiff may miss days of work intermittently. *See* Tr. 33.

While Defendant argues the ALJ did not need to explicitly exclude the "may miss days of work intermittently" limitation from the residual functional capacity finding because the limitation was vague, "not useful," and equivocal, the Court disagrees.

First, Defendant argues that the "may miss days of work intermittently" limitation is "not useful" because it fails to specify Plaintiff's functional limits. ECF No. 19 at 18–19. Defendant cites to *Ford v. Saul*, where the Ninth Circuit held that the doctor's descriptions of the claimant's ability to perform work duties as "fair" and "limited" were not useful regarding the claimant's limitations. 950 F.3d 1141, 1156 (9th Cir. 2020). However, *Ford* is not persuasive as its description that that claimant's ability is "fair" and "limited" is much vaguer than the description here that Plaintiff "may miss days of work intermittently." *See* ECF Nos. 16 at 17–18, 20 at 1–6.

Second, Defendant argues that the ALJ did not need to include the "may miss days of work intermittently" limitation in the residual functional functioning

ORDER GRANTING PLAINTIFF'S MOTION - 16

capacity finding because, like in *Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217 (9th Cir. 2010), the medical opinion did not provide specific limitations on Plaintiff. The Court disagrees.  The Ninth Circuit held in *Turner* that a medical opinion that concluded only that the claimant dealt with his condition "by isolating himself from society and living out in the country," did not assign specific limitations on the claimant and that even if the opinion did, the ALJ rejected the limitations. *Turner*, 613 F.3d at 1222–23.  Again, the *Turner* description is much vaguer than the description here that Plaintiff "may miss days of work intermittently."  *See* ECF Nos. 16 at 17–18, 20 at 1–6.   Additionally, the ALJ did not reject the "may miss days of work intermittently" limitation like in *Turner*.

Finally, Defendant argues that the ALJ did not need to include the "may miss days of work intermittently" limitation in the residual functional capacity finding because Dr. E's and Dr. Comrie's opinions did not provide specific attendance restrictions.  ECF No. 19 at 19.  Defendant notes that in *Larkin v. Saul*, 819 F. App'x 535 (9th Cir. 2020), the Ninth Circuit held that a medical opinion describing that a claimant would have "some limitation with keeping a regular workweek" was properly accounted for in the residual functional capacity determination through the ALJ's provided limits of simple, routine tasks and short, simple instructions.  ECF No. 19 at 19.  However, as Plaintiff argues in response, in *Larkin*, the Ninth Circuit held that the limitation was properly accounted for because the medical opinion *qualified* the limitation by stating within the same sentence that although the claimant had "some limitation with keeping a regular workweek," the claimant "retain[ed] the ability to follow through with reasonable CPP [concentration, persistence, and pace]."  *Larkin*, 819 F. App'x at 537.  The record here is different.  In this case, Dr. E and Dr. Comrie opined, without modification, unlike *Larkin*, that Plaintiff "may miss days of work intermittently." *See* ECF Nos. 16 at 17–18, 20 at 1–6.

ORDER GRANTING PLAINTIFF'S MOTION - 17

In conclusion, the ALJ provided an inaccurate hypothetical to the vocational expert by failing to include the "may miss days of work intermittently" limitation. The ALJ was required to include the limitation because the ALJ found the opinions of Dr. E and Dr. Comrie, who imposed the limitation, to be somewhat or generally persuasive, Tr. 42–43, but the ALJ did not account for disregarding the properly supported limitations in the residual functional capacity. *See Robbins*, 466 F.3d at 886. Because the vocational expert stated that a person who misses more than eight hours per month is not able to maintain employment, Tr. 77–78, the "may miss days of work intermittently" limitation may "have been determinative as to the vocational expert's recommendation," *Robbins*, 466 F.3d at 886. Thus, the ALJ erred by not including the "may miss days of work intermittently" limitation in the residual functional capacity, and the error was not harmless. *See id.*

**C. Whether the ALJ properly evaluated Plaintiff's subjective claims.**

Plaintiff reported he is unable to work due to: PTSD; anxiety; depression; flashbacks; body aches; trouble comprehending, remembering, understanding, and communicating; headaches; and an inability to concentrate. *See* Tr. 34, 244. Additionally, Plaintiff noted he can only pay attention for "seconds at best," that he finds it "very difficult" to follow written instructions, that he does not follow spoken instructions well, and that he does not get along with authority figures well. Tr. 267.

The ALJ found that "[i]nconsistencies undermine the weight that can be given to [Plaintiff's] symptom reports." Tr. 34. Specifically, the ALJ noted that Plaintiff's (1) mental status examinations, (2) brief improvement in symptoms and lack of need for additional treatment, (3) activities of daily living; and (4) presentation to Dr. Friedman were inconsistent with Plaintiff's asserted degree of limitation. Tr. 34–37. The ALJ's finding that Plaintiff's subjective claims are inconsistent with the preceding portions of evidence is not supported by substantial evidence. *See Garrison*, 759 F.3d at 1009.

ORDER GRANTING PLAINTIFF'S MOTION - 18

**1. Whether the mental status examinations were inconsistent with Plaintiff's asserted degree of limitation.**

As described above, *see supra* Section A.1., Plaintiff's mental status examinations that included findings such as normal speech, congruent affect, good insight, unremarkable motor activity, appropriate thought content, cooperative attitude, and good eye contact, Tr. 34–37, are not reasonably inconsistent with Plaintiff's reported limitations of having trouble comprehending, remembering, understanding, and communicating, Tr. 34, 244.  The ALJ has not explained how these findings are at odds with Plaintiff's reported symptoms.

For example, in November 2021, following the alleged disability onset, Plaintiff attended a "Psych Initial Visit" at ROYP Medical Group, PLLC, with Marli Parobek, DNP, APRN.  Tr. 34–35, 332–340.  At the visit, Plaintiff reported experiencing "symptoms of PTSD," "hypervigilance, feeling detached, irritable, forgetfulness, with poor dexterity and poor coordination."  Tr. 333.

The ALJ found Plaintiff's symptom reports to be inconsistent with Plaintiff's mental status examination during the visit, noting that the examination revealed Plaintiff's "speech was normal," Plaintiff "exhibited appropriate mood and affect," had logical, relevant, and normal thought processes and content, "normal insight," normal "recent and remote memory, attention span, concentration, and fund of knowledge," and "no signs of psychomotor agitation," "bizarre behavior," or "hallucinations or misperceptions."  Tr. 34–35.

But the mental status examination is not inconsistent with Plaintiff's symptom reports.  Normal speech, mood, affect, thought processes, and insight do not contradict Plaintiff's reports of "hypervigilance, feeling detached, irritable, forgetfulness, with poor dexterity and poor coordination."  Similarly, a lack of "psychomotor agitation," "bizarre behavior," and "hallucinations or misperceptions" does not contradict Plaintiff's reports of "hypervigilance, feeling detached, irritable, forgetfulness, with poor dexterity and poor coordination."  And

ORDER GRANTING PLAINTIFF'S MOTION - 19

while perhaps, on its face, normal "memory, attention span, concentration, and fund of knowledge" may clash with Plaintiff's report of experiencing "forgetfulness," the setting of the mental status examination resolves that concern.

Even if the mental status examination observations were inconsistent with Plaintiff's symptom reports, Plaintiff's presentation during a medical evaluation—in a confined, sterile setting with a clinician—does not reasonably contradict Plaintiff's reports of symptoms experienced in daily life outside of that setting. Further, even the medically trained evaluator, Nurse Parobek, did not find the mental status examination inconsistent with Plaintiff's symptom reports.  Tr. 334–35.  Nurse Parobek, as a result of Plaintiff's symptom reports—and despite the mental status examination—diagnosed Plaintiff with depression, anxiety, and post-traumatic stress disorder.  Tr. 334–35.  Thus, the ALJ erred.

**2. Whether Plaintiff's brief improvement in symptoms and lack of need for additional treatment was inconsistent with Plaintiff's asserted degree of limitation.**

The ALJ's determination that Plaintiff's brief improvement in symptoms and lack of need for additional treatment is inconsistent with Plaintiff's asserted degree of limitation is not supported by substantial evidence.  *See Garrison*, 759 F.3d at 1009.  The ALJ noted that following treatment at Deer Hollow Recovery and Wellness Centers in 2022, Plaintiff was "more 'well equipped' to manage his symptoms," more "will[ing] to re-engage in his life," and had been able to "decrease the frequency and intensity of his PTSD symptoms."  Tr. 35.  The ALJ found this improvement to be inconsistent with Plaintiff's asserted degree of limitation—that is, Plaintiff's assertion that he is unable to perform normal activities and work a full-time job due to his PTSD symptoms, which include trouble comprehending, remembering, understanding, and communicating.  Tr. 34.

However, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a

ORDER GRANTING PLAINTIFF'S MOTION - 20

few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017. Instead, the ALJ must interpret reports of improvement "with an understanding of the patient's overall well-being and the nature of . . . symptoms," and "with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.* Thus, the ALJ erred by focusing on Plaintiff's brief improvement of symptoms while failing to consider Plaintiff's ongoing and sometimes increasing symptoms, *see, e.g.*, Tr. 963–65.

Additionally, the ALJ noted that Plaintiff's "lack of need for additional or continued aggressive treatment is inconsistent with the degree of limitation asserted." Tr. 36. The ALJ reasoned that Plaintiff's treatment was "minimal and limited to conservative treatment options" after his treatment at Deer Hollow Recovery and Wellness Centers in early 2022. Tr. 36. However, Plaintiff's treatment was not "minimal and limited to conservative treatment options" after his treatment with Deer Hollow in early 2022. After ceasing treatment at Deer Hollow, Plaintiff began monthly treatment with both Nurse Wellwood at Essential Psychiatry and with Dr. Thompson at Forensic Assessment & Treatment Services, PLLC. Tr. 546–614, 670–77, 833–44. Additionally, Plaintiff's treatment regimen included psychiatric medications. Tr. 546–614, 670–77, 833–44. Monthly treatment with two providers and psychiatric medications is not reasonably characterized as "minimal" and "conservative." Therefore, the ALJ's finding that Plaintiff's treatment after Deer Hollow was "minimal and limited to conservative treatment options" is not supported by substantial evidence. *See Garrison*, 759 F.3d at 1009.

\\

\\

ORDER GRANTING PLAINTIFF'S MOTION - 21

**3. Whether Plaintiff's activities of daily living are inconsistent with Plaintiff's asserted degree of limitation.**

The ALJ found that Plaintiff's activities of daily living—maintaining personal hygiene independently, preparing meals, performing household chores, operating a motor vehicle, going shopping, and working out at the gym—are inconsistent with Plaintiff's asserted limitations. Tr. 37.

However, as described above, § A.1., Plaintiff's activities of daily living are not reasonably inconsistent with Plaintiff's asserted limitations because the activities of daily living are not similar to typical work responsibilities. *See Diedrich*, 874 F.3d at 643 ("House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities."). The ALJ did not explain how Plaintiff's activities of daily living are at odds with regular job duties. Thus, the ALJ erred.

**4. Whether Plaintiff's presentation to Dr. Friedman was inconsistent with Plaintiff's asserted degree of limitation.**

The ALJ found Plaintiff's presentation to Michael Friedman, D.O., to be inconsistent with Plaintiff's asserted degree of limitation because Plaintiff presented to Dr. Friedman as "dramatic" and "practiced," and Dr. Friedman noted "secondary gain may be present." Tr. 37.

The ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 722. Once a claimant shows "objective medical evidence of an underlying impairment which might reasonably produce the . . . symptoms . . . the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so," unless the ALJ finds there is affirmative evidence of malingering. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). Mere signs of malingering, that are unexplained, do

ORDER GRANTING PLAINTIFF'S MOTION - 22

not constitute affirmative evidence of malingering. *Austin v. Saul*, 818 F. App'x 725, 727–28 (9th Cir. 2020). Additionally, "a claimant's possible exaggerations regarding the severity of his symptoms" do not equate to affirmative evidence of malingering. *Id.*

The ALJ did not make an affirmative finding of malingering here, nor did Dr. Friedman. Instead, Dr. Friedman opined that Plaintiff, through his answers, invalided the MMPI-2 test. Tr. 1131. Dr. Friedman noted that "[i]nvalid results of this kind come from many sources, including conscious distortion or faking," and that "it was unclear how much of the claimant's presentation was a conscious distortion in order to gain services or avoid employment." Tr. 1131. Importantly, Dr. Friedman did not determine that Plaintiff was affirmatively malingering, nor did the ALJ. Thus, the ALJ had to provide clear and convincing reasons to reject Plaintiff's testimony about the severity of his symptoms. *See Lambert*, 980 F.3d at 1277. Dr. Friedman's opinion that "it was unclear how much . . . was conscious distortion or faking," and that Plaintiff was "dramatic" and "practiced" is not reasonably clear and convincing evidence to reject Plaintiff's claims about the severity of his symptoms. *See id.* Additionally, as described above, the ALJ's other reasons for rejecting Plaintiff's subjective claims were error.

## CONCLUSION

The case must be reversed and remanded because the ALJ harmfully misevaluated the medical opinions and Plaintiff's subjective claims, and as a result, the ALJ improperly determined Plaintiff's residual functional capacity and presented an inaccurate hypothetical to the vocational expert. While Plaintiff contends the Court should remand for an award of benefits, ECF Nos. 16 at 2, 20 at 10, such a remand should only be granted in the rare case when "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015). Here, the medical opinions and Plaintiff's subjective claims must be re-weighed, the residual

ORDER GRANTING PLAINTIFF'S MOTION - 23

functional capacity must be redetermined, and a proper hypothetical must be presented to the vocational expert.  Thus, further proceedings are necessary, and a remand for an award of benefits is improper.

On remand, the ALJ shall: re-evaluate the opinions of Thomas Genthe, Ph.D.; Candie Wellwood, PMHNP-BC, ARNP; James R. Hopfenbeck, M.D.; and Lorelei Thompson, Ph.D.; reassess Plaintiff's subjective claims; redetermine the residual functional capacity; present the revised hypothetical to the vocational expert; and proceed to the remaining steps as appropriate.

Having reviewed the record and the ALJ's findings, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g).

Therefore, **IT IS HEREBY ORDERED:**

1.    Plaintiff's motion to reverse, **ECF No. 16**, is **GRANTED**.

2.    Defendant's motion to affirm, **ECF No. 20**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED March 30, 2026.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION - 24